IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MONTE R. WOOD, JR. and KELLIE M. WOOD, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:11-cv-00139 |
| CITIMORTGAGE, INC. and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., | § § § § | Jury |
| Defendants. | § § § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 56(c) and LR CV-56, CitiMortgage, Inc. ("CitiMortgage") and Mortgage Electronic Registration Systems, Inc. ("MERS"), Defendants, file this Motion for Summary Judgment and Brief in Support with respect to all of the claims and causes of action asserted against Defendants by Monte R. Wood and Kellie M. Wood, Plaintiffs (the "Woods"), in Plaintiffs' Original Verified Petition (the "Petition"), and would respectfully show the Court as follows:

## SUMMARY OF THE MOTION

Defendants are entitled to summary judgment as to all claims asserted by the Woods - wrongful foreclosure, declaratory judgment/suit-to-quiet, violations of the Fair Debt Collection Practices Act, violations of the Texas Debt Collection Act, and various claims for equitable relief. There is no evidence of, and the only summary judgment evidence conclusively negates, at least one element of each of these claims. Thus, the Court should grant the Motion and enter summary judgment for Defendants on all of the Woods' claims.

## STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

The issues to be decided by the Court are:

1.   Whether Defendants are entitled to judgment as a matter of law as to Plaintiffs' claims for wrongful foreclosure, declaratory judgment/suit-to-quiet, violations of the Fair Debt Collection Practices Act, and violations of the Texas Debt Collection Act.

2.   Whether Plaintiffs are entitled to equitable relief in the form of an accounting and a temporary injunction.

## SUMMARY JUDGMENT EVIDENCE

In support of this Motion, Defendants offer the following summary judgment evidence, which are attached hereto and incorporated by reference herein:

- Affidavit of Britt Zehnle (Exhibit "1") and Exhibits A-I attached thereto;

- Affidavit of Beck Howell (Exhibit "2") and Exhibits A-C thereto;

- Certified copy of Deed of Trust (Exhibit "3");

- Certified copy of Assignment of Mortgage from Service First Mortgage Corporation to Principal Residential Mortgage, Inc. (Exhibit "4");

- Certified copy of Assignment of Deed of Trust from Principal Residential Mortgage, Inc. to MERS (Exhibit "5");

- Certified copy of Assignment of Note and Deed of Trust from MERS to CitiMortgage (Exhibit "6"); and

- Certified copy of Substitute Trustee's Deed (Exhibit "7").

## STATEMENT OF UNDISPUTED MATERIAL FACTS AND FACTS CONCLUSIVELY ESTABLISHED BY THE SUMMARY JUDGMENT EVIDENCE

1.      On June 24, 1999, Mr. Wood borrowed $136,616.00 (the "Loan") from Service First Mortgage Corporation to purchase the property located at 219 Tanglewood Drive, Wylie, Collin County, Texas 75098 (the "Property").  *See* Affidavit of Britt Zehnle ("Zehnle Aff.") ¶ 4. Mr. Wood signed a promissory note (the "Note") in which he promised to repay to Service First Mortgage Corporation and its successors and assigns the $136,616.00 plus interest and any other applicable charges as provided in the Note, and that if he did not make the monthly

payments when due, he would be in default.  (Ex. 1-A; Petition ¶ 4.1).   Attached hereto as Exhibit "1-A" is a true and correct copy of the original Note. (Zehnle Aff. ¶ 4, Ex. 1-A).

2.      In connection with the Note, the Woods signed a Deed of Trust, in which they pledged the Property as collateral for the Note.  (Zehnle Aff. ¶ 4).  The Woods do not dispute that they signed the Deed of Trust.  (Petition ¶ 4.1). Attached hereto as "Exhibit 1-B" is a true and correct copy of the Deed of Trust.  (Zehnle Aff. ¶ 4, Ex. 1-B).

3.      On or about July 9, 1999, Service First Mortgage Corporation endorsed the Note to Principal Residential Mortgage, Inc., who then became the lender entitled to enforce the Note and Deed of Trust. (Zehnle Aff. ¶ 5, Ex. 1-A).  Mr. Wood was informed that Principal Residential Mortgage, Inc. was the new servicer of the debt and that he was to send all future Note payments to Principal Residential Mortgage, Inc. (Zehnle Aff. ¶ 5, Ex. 1-C).

4.      On April 1, 2002, Mr. Wood entered into a Loan Modification Agreement, which, among other things, acknowledged Principal Residential Mortgage, Inc. as the lender and that the obligations created by the Note and secured by the Deed of Trust are valid and enforceable by Principal Residential Mortgage, Inc. (Petition ¶ 4.3, Ex. C; Zehnle Aff. ¶ 6, Ex. 1-D).

5.      On April 22, 2002, Principal Residential Mortgage, Inc. assigned the Deed of Trust to MERS.  (Ex. 5).

6.      On December January 1, 2005, Principal Residential Mortgage, Inc. merged with CitiMortgage, and therefore CitiMortgage became entitled to enforce the Note and Deed of Trust. (Zehnle Aff. ¶ 7).  By letter dated December 23, 2004, Mr. Wood was told about the merger, that CitiMortgage would be taking over servicing of the Loan, and that Mr. Wood was required to make all future payments on the Note to CitiMortgage. (*Id.*, Ex. 1-E).  Mr. Wood did not object to the change in the servicer of the Loan to CitiMortgage. (*Id.*).

7.      The Note was endorsed in blank by Principal Residential Mortgage, Inc.  (Ex. 1-A).  CitiMortgage is in possession of the original Note. (Zehnle Aff. ¶ 4, Ex. 1-A).

8. In 2006, MERS assigned the DOT lien to CitiMortgage. (Ex. 6).

9. All payment activity on the Loan is reflected in the Loan's payment history, which is electronically maintained by CitiMortgage. (Zehnle Aff. ¶ ). Attached hereto as Exhibit "1-F" is a true and correct copy of the payment history of the Note. (Id., Ex. 1-F). Also, all communications and transactions between the lender and the borrower are recorded in the electronically maintained system notes for the Loan, a true and correct copy of which (redacted for attorney-client privilege) is attached hereto as Exhibit "1-G." (Id.; Ex. 1-G).

10. According to the payment history and system notes, in March 2010, CitiMortgage agreed to provide the Woods a loan modification, the first payment under which was due May 1, 2010. The Woods failed to make the first payment under the loan modification as well as subsequent payments. (Zehnle Aff. ¶ 8, Ex. 1-F, Ex. 1-G). In fact, the last full payment on the Note that CitiMortgage received from the Woods was on March 24, 2010, which only brought the Note current up to the April 1, 2010 payment. (Id.). The Woods admit that at the time of the foreclosure sale, they were in default by at least seven (7) months. (Petition ¶ 4.15).

11. As a result of the 2010 Loan default, on July 2, 2010, CitiMortgage notified the Woods by certified mail that they were in default, that they had 30 days to cure the amount of the default by paying to CitiMortgage the amount of the default, $5,134.64, and that failure to cure the default would result in acceleration of the debt (the "Notice of Default"). (Zehnle Aff. ¶ 11). Attached hereto as Exhibit "1-H" is a true and correct copy of the Notice of Default. (Id., Ex. 1-H.

12. The Woods did not cure the Loan default. (Zehnle Aff. ¶ 12). As a result, CitiMortgage engaged counsel to foreclose on the Property. (Id.).

13. By letter dated November 11, 2010, CitiMortgage' foreclosure counsel notified the Woods by certified mail that CitiMortgage had accelerated the debt and that the entire remaining balance of the Note was due and owing (the "Notice of Acceleration"). (Howell Aff. ¶

4, Ex. 2-A).   The Notice of Acceleration also stated that a Substitute Trustee had been appointed to sell the Property at a foreclosure sale on January 4, 2011 (the "Notice of Substitute Trustee Sale").   (Id.).   The Notices were sent by certified mail to the Woods (both of them) at the address on file with CitiMortgage for the Woods, which was the Property address.   (Id.). Attached hereto as Exhibits "2-A" and "2-C" are true and correct copies of the Notice of Acceleration and Notice of Substitute Trustee's Sale, as well as foreclosure counsel's mail log showing the letters were sent out. (Howell Aff. ¶¶ 4, 6, Exs. 2-A, 2-C).

14.     Prior to the foreclosure sale, the Woods failed to tender the amounts due and owing on the Loan. (Zehnle Aff. ¶ 12).

15.     As a result, CitiMortgage sold the Property at foreclosure at the date and time noticed in the Notice of Substitute Trustee's sale – January 4, 2011.   (Zehnle Aff. ¶ 12; Howell Aff. ¶ 5; Ex. 2-B).   Attached hereto as Exhibit "2-B" is a true and correct copy of the Substitute Trustee's Deed.   (Id.; see also Ex. 7).   The Property sold at foreclosure for $163,911.50.   (Id.). CitiMortgage purchased the Property at the sale and is currently the owner of record of the property. (Ex. 2-B; Zehnle Aff. ¶ 12).

16.     At the time of the foreclosure sale, the Woods had no equity in the Property.   The sale price was the total amount of the debt owed at that time, which was greater than the estimated market value of the Property around the time of the foreclosure sale (between $148,00 and $152,000) (Zehnle Aff. ¶ 13).   Attached hereto as "Exhibit 1-I" is a true and correct copy of the March 15, 2011 BPO appraisal. (Id., Ex. 1-I).

17.     In accordance with CitiMortgage policy and procedure, any communication with the Woods regarding a Loan workout or the status of the Loan, had they occurred, would have been recorded in the system notes for the Loan or otherwise committed in written correspondence from CitiMortgage to the Woods. (Zehnle Aff. ¶ 9).   CitiMortgage, in the ordinary and regular course of its business, relies on the information contained in the system

notes, payment history, and other loan documents, as well as on the absence of certain information contained in such records.   (Zehnle Aff. ¶¶ 3, 9). CitiMortgage's practice and procedure is that if a particular representation, promise or agreement is not recorded in the system notices, such representation, promise or agreement never occurred or existed.  (Zehnle Aff. ¶ 9).

18.    According to CitiMortgage's system notes for the Loan, there is no record of any representation made by CitiMortgage to the Woods in May 2010 or any other time in which the Woods were told to stop making payments in order to qualify for assistance with the Loan. (Zehnle Aff. ¶ 14).   In fact, the system notes reflect no verbal communication at all between CitiMortgage and the Woods in May 2010.  (*Id*.).  Further, there is no notation or unusual entry in the notes or loan documents suggesting any sort of error in the way communications or events were recorded or maintained in CitiMortgage's system notes or loan file for the Woods' account. (*Id*.).

19.    The Woods have failed to tender the amounts due and owing on the Loan, yet they continue to reside at the Property.  (Zehnle Aff. ¶ 15; Petition ¶ 2.1).  Were the foreclosure sale rescinded and the Note reinstated, the amount that the Woods would have to pay to bring the Note current as of January 17, 2012 would be $32,913.21.  (*Id*.).

## ARGUMENT AND AUTHORITIES

I.    **The Woods' Wrongful Foreclosure Claim Fails Because There Is No Genuine Issue Of Material Fact As to Defendants' Authority To Foreclose And Whether Requisite Notices Were Given.**

The Woods' claim for wrongful foreclosure fails because there is no competent evidence supporting any element of the claim.  To prove a claim for wrongful foreclosure, the Woods must establish: (1) a defect in the foreclosure sale proceeding, (2) a grossly inadequate selling price,

and (3) a causal connection between the defect and the grossly inadequate selling price.[1]   The Woods allege that the foreclosure sale was wrongful because: (1) CitiMortgage allegedly did not have authority/standing to foreclose (Petition ¶ 5.2, 6.4); (2) CitiMortgage allegedly misled the Woods about the status of the loan and their request for a loan workout (Petition ¶¶ 4.8, 4.9, 4.12, 6.2), and (3) CitiMortgage allegedly did not provide the Woods the requisite foreclosure notices (Petition ¶¶ 4.10, 5.2, 6.2, 6.3).   There is no evidence of any of this.   On the contrary, the evidence conclusively negates these allegations.   In any event, as a matter of law, the Woods cannot recover damages under this claim.

A.   **There Is No Evidence Of Any Defect In The Foreclosure Sale.**

1.   **There Is No Evidence Of Any Defect In The Chain Of Title; The Evidence Conclusively Establishes CitiMortgage's Standing To Foreclose.**

CitiMortgage had standing to foreclose on the Property, and there is no competent evidence to the contrary.   The Woods allege that: (1) the assignment of the debt from Service First Mortgage Corporation to Principal Residential Mortgage, Inc. is defective, and (2) the assignment of the Note and Deed of Trust from MERS to CitiMortgage is defective. (Petition ¶¶ 4.2, 4.5).   There is no evidence supporting these allegations, and thus no genuine issue of material fact as to CitiMortgage's standing to foreclose on the Property.

First, there is no evidence of any material defect in the assignment from Service First Mortgage Corporation to Principal Residential Mortgage, Inc.   Plaintiffs allege that "the assignment contains no date of execution and no date showing when the notary public allegedly notarized the instrument" (Petition at ¶ 4.2), but Plaintiffs point to no authority establishing that

---

[1] *See Sotelo v. Interstate Fin. Corp.,* 224 S.W.3d 517, 523 (Tex. App.—El Paso 2007, no pet.) ("The elements of wrongful foreclosure are (1) an irregularity at the sale; and (2) the irregularity contributed to an inadequate price." (citing *Frestier v. San Antonio Sav. Ass'n,* 564 S.W.2d 160, 165 (Tex. App.—San Antonio 1978, writ ref'd n.r.e.); *Charter Nat'l Bank-Houston v. Stevens,* 781 S.W.2d 368, 371 (Tex. App.—Houston [14th Dist.] 1989, writ denied).

this alleged defect is in fact a defect or that it is material. Indeed, under Texas law, the alleged defect is no defect at all – the date the assignment was recorded in public records is the relevant date for notice purposes, not the date indicated on the assignment (June 30, 2009).[2] In any event, there is no mystery to when the assignment was filed. As plainly evidenced by the document numbers on the face of the Deed of Trust and the assignment, the first page of the assignment (4448 0706) immediately follows the last page of the Deed of Trust (4448 0705); thus, the assignment was filed at the same time as and with the Deed of Trust. (Pet. Exs. A, B; Exs. 3, 4).

Similarly, Plaintiffs' allegation that the assignment of the Deed of Trust from MERS to CitiMortgage is defective is wholly without support. Plaintiffs point to no evidence or authority establishing that the alleged defect is a defect or that it is material. Plaintiffs allege that the person who signed the assignment for MERS was not authorized by MERS to execute the Assignment; but there is no evidence of that. (Petition ¶ 4.5). Plaintiffs' mere suspicion and belief certainly is not admissible evidence.

Further, Plaintiffs erroneously suggest that the assignment is invalid because the date of the document – December 27, 2006 – does not match the date the notary signed the document, but that is a complete misreading of the document. (Petition ¶ 4.5, Ex. 6). The affiant states that the assignment is to memorialize the transfer and assignment that took place on December 27, 2006; she does not say that she is signing the document on December 27, 2006. Instead, the notary represents that both she and and the affiant signed the document on January 2, 2007; there is no evidence that the notary's representation is false. Plaintiffs cite no authority that requires that the effective date of a document exactly match the date the parties sign the

---

[2] *See Zoluaga v. BAC Home Loans Servicing, L.P.*, 2011 U.S. Dist. LEXIS 132370 (E.D. Tex. Nov. 16, 2011) (Mazzant, J.) (the assignment is a notice document and merely serves to memorialize the transfer of interest).

document; any such rule would be ridiculous since documents are created and signed on different dates as a regular course of business. Apart from Plaintiffs' own "serious concerns and doubts" about the validity of the assignment, which is, of course, not competent summary judgment evidence, there is no evidence that any of this invalidates the assignment.

The summary judgment evidence conclusively establishes CitiMortgage's standing to enforce the Note and Deed of Trust.   The Note was endorsed by Service First Mortgage Corporation to Principal Residential Mortgage, Inc., which gave Principal Residential Mortgage, Inc. the right to enforce the Note. (Ex. 1-A).  Principal Residential Mortgage, Inc. then endorsed the Note in blank, which renders the Note enforceable by the holder in possession of it, who is CitiMortgage.  (Zehnle Aff. ¶ 4; Ex. 1-A).[3]  Further, the certified copies of the assignments (Exs. 3-6), and the fact that Plaintiffs obtained copies of them and attached them to the Petition, demonstrate that the assignments/transfers of the lien to CitiMortgage were recorded in public records which put all, including Plaintiffs, on notice. (Petition, Exs. A-E).  There is no evidence raising any fact issue as to the validity of these assignments/transfers.

Finally, and in any event, the Woods lack standing to challenge or have waived any challenge to CitiMortgage's right to enforce the Note and Deed of Trust.  This Court and other authorities have held that a debtor does not have standing to challenge the validity of an assignment to which they are not a party.[4]  Further, even assuming the Woods have standing to

---

[3] See Robeson v. Mortgage Elec. Registration Sys., 2012 Tex. App. LEXIS 137 (Tex. App.—Fort Worth Jan. 5, 2012, no pet.) ("An instrument containing a blank endorsement is payable to the bearer and may be negotiated by transfer of possession alone."), citing Tex. Bus. & Comm. Code Ann. § 3.205 (West 2002).

[4] See McAllister v. BAC Home Loans Servicing LP, No. 10-504 (E.D.Tex., Apr. 28, 2011) (Mazzant, J.); (Adopted Jun. 5, 2011) (2011 WL 2200672); Eskridge v. Fed. Home Loan Mortgage Corp. et al., Case No. 6:10–CV–00285–WSS (W.D.Tex. Feb. 24, 2011) (Smith, J.); (2011 WL 2163989 (W.D.Tex.).  See also Richard A. Lord, 29 Williston on Contracts § 74:50 (4th Ed.) ("[T]he debtor has no legal defense [based on invalidity of the assignment] ... for it cannot be assumed that the assignee is desirous of avoiding the assignment."); 6A C.J.S. Assignments § 132 ("[T]he only interest or right which an obligor of a claim has in the instrument of assignment is to insure him or herself that he or she will not have to pay the same claim twice. . . A debtor cannot raise alleged acts of fraud or question the motive or purpose

challenge the assignments, their claims are barred.  The Woods have had at least constructive notice of the assignment to Principal Residential Mortgage, Inc. for more than thirteen (13) years and notice of the assignment from MERS to CitiMortgage for more than five (5) years. Any objections to such assignments are barred by laches and/or Texas' two-year limitations period for technical defects in conveyance instruments.[5]  Also, Plaintiffs have waived and are estopped from challenging CitiMortgage's standing.  Mr. Wood entered into a loan modification agreement in 2002 with CitiMortgage, in which he acknowledged CitiMortgage's right to enforce the Note and Deed of Trust.  (Pet. Ex. C; Zehnle Aff., Ex. 1-D).  Additionally, Mr. Wood never objected to CitiMortgage's right to service the Loan, and he made payments to CitiMortgage for years.  (Zehnle Aff. ¶ 7, Ex. 1-F). Plaintiffs cannot now challenge CitiMortgage's standing in order to excuse their own failure to honor contractual obligations under the Note and Deed of Trust that, until recently, they had honored.

Thus, there is no genuine issue of material fact as to CitiMortgage's standing to foreclose on the Property.

### 2.   There Is No Evidence That CitiMortgage Made Any Material Misstatements To The Woods About The Loan.

There is no evidence that CitiMortgage made any material misrepresentations to the Woods about the Loan.  Plaintiffs' claim that CitiMortgage mislead them about the status of the Loan by allegedly assuring them that "their request for a workout of the Loan was being reviewed" (Petition ¶¶ 8.2, 9.2), that "their Loan was current in May 2010" (Petition ¶ 6.2), and that "no help would be available until they were several months delinquent" (Petition ¶ 5.2). There is no evidence of any of this; on the contrary, the summary judgment evidence

---

underlying an assignment); 6 Am. Jur. 2d Assignments § 2. ("[A]n assignment generally requires neither the knowledge nor the assent of the obligor, [and] because an assignment cannot change the obligor's performance.")
[5] *See* TEX. CIV. PRAC. & REM. CODE § 16.033 (two-year limitations runs from the date the defective instrument was filed for record with the county clerk of the county where the property is located).

---

conclusively establishes that the alleged representations never occurred.

First, the alleged representations are meritless because there is no evidence that any of them ever occurred or that they were material to Plaintiffs.   Instead, the summary judgment evidence conclusively establishes that these alleged representations never occurred. CitiMortgage's representative, Britt Zehnle, testified that CitiMortgage's regular practice and procedure is to record in CitiMortgage's system notes any discussions with borrowers, including discussions involving and representations by CitiMortgage regarding loan workouts and the status of a loan. (Zehnle Aff. ¶¶ 9,14).   She testified that CitiMortgage's system notes for the Loan show no record of any oral communication with the Woods in which CitiMortgage told the Woods that their request for a workout of the Loan was being reviewed, that the Loan was current in May 2010, or that no help would be available until the Woods were several months delinquent. (Zehnle Aff. ¶ 14, Ex. 1-G).  Further, the notes show instead that in March 2010 CitiMortgage offered the Woods a loan modification agreement but the Woods failed to even make the first payment, which was due on May 1, 2010; thus, in May 2010 the Woods were already in default and did not need to miss a few payments to be in default. (Id., Ex. 1-G).  The records are accurate; there is no notation or unusual entry suggesting any sort of error in the way communications or events were recorded in CitiMortgage's system notes for the Woods' account. (Id. ¶ 14). Further, the payment history demonstrates that the Woods were not current on the Loan in May 2010 and in July 2010 they were plainly told that they were in default. (Zehnle Aff., Ex. 1-F, Ex.1-H).  Indeed, Plaintiffs admit that they were in default for seven (7) months prior to the January 4, 2011 foreclosure sale (Petition ¶ 4.15).

In short, there is no evidence that any of the alleged representations were ever made to the Woods.  Nor is there any evidence that they relied on them in any way to their detriment.

Finally, even if the alleged representations occurred, they are immaterial because there

is no evidence that they caused a grossly inadequate foreclosure sale price.[6]  Thus, there is no genuine issue of material fact as to this claim.

### 3.       There Is No Evidence That All Requisite Notices Were Not Provided.

There is no evidence of any defect in the foreclosure sale caused by lack of notice of the sale.  The Woods allege that they did not receive notice of default, acceleration, and notice of sale.  (Petition ¶¶ 4.10, 4.14, 5.2, 6.2, 6.3).  Those allegations are patently false – notice of default, and opportunity to cure, notice of acceleration, and notice of sale were all provided to the Woods. (Zehnle Aff., Exs. 1-H; Howell Aff., Exs. 2-A, 2-C).   There is no evidence to the contrary.  In addition, the allegations are immaterial. Under Texas law, actual notice is not required – notice is deemed proper as long as the statutory and Deed of Trust notice requirements are satisfied.[7]  Here, all notices were sent by certified mail to the Property address, which is the last address on file for the Woods. (Zehnle Aff. ¶ 11, Ex. 1-H; Howell Aff. ¶ 4, Exs. 2-A, 2-C).     There is no evidence to the contrary. Thus, there is no genuine issue of material fact as to this alleged foreclosure defect.

### B.       There Is No Evidence Of An Inadequate Sale Price.

Even assuming *arguendo* that there is evidence of a defect in the foreclosure sale, there is no evidence of the other elements of the claim – a grossly inadequate foreclosure sale price and the alleged defect contributed to that grossly inadequate sale price.

The Woods allege that the foreclosure sale price was grossly inadequate because (i) the original loan amount in June 1999 was only $136,616, (ii) the modified principal amount as of

---

[6] *See Sotelo v. Interstate Fin. Corp.,* 224 S.W.3d 517, 523 (Tex. App.—El Paso 2007, no pet.) ("The elements of wrongful foreclosure are (1) an irregularity at the sale; and (2) the irregularity contributed to an inadequate price." (citing *Frestier v. San Antonio Sav. Ass'n,* 564 S.W.2d 160, 165 (Tex. App.—San Antonio 1978, writ ref'd n.r.e.); *Charter Nat'l Bank-Houston v. Stevens,* 781 S.W.2d 368, 371 (Tex. App.—Houston [14th Dist.] 1989, writ denied).

[7] Tex. Prop. Code § 51.002.

---

April 2002 was only $144,659.47, and (iii) Plaintiffs had paid principal and interest for over nine (9) years and (iv) the loan had only been in default for about seven (7) months prior to the alleged foreclosure.  (Petition ¶ 4.15).  These allegations, even if true, are irrelevant; they fail to account for the loan activity from 2002 to 2010, during which time the Woods became seriously delinquent (multiple times) on the Note and incurred late charges and foreclosure attorney fees and expenses.  (Zehnle Aff., Ex 1-F, 1-G.

Also, at best, these allegations suggest there might be excess sale proceeds, but not a grossly inadequate sale price.  In a wrongful foreclosure claim, damages are limited to the difference between the value of the property and the indebtedness, in other words, lost equity in the property.[8]  There is no evidence of any lost equity. On the contrary, the evidence is that the Woods had no equity in the Property at the time of the foreclosure sale.  (Zehnle Aff. ¶ 13).  The estimated market value of the Property around the time of the foreclosure sale was between $148,000 and $152,000; thus, at the time of the foreclosure sale, the Woods had no equity in the Property because the total amount of the debt owed at that time ($163,911.50), which was the foreclosure sale price, was greater than the market value of the Property.  (*Id.*; Ex. 1-I; Ex. 7).

### C.   There Is No Evidence Of Any Recoverable Damages; Alternatively, Plaintiffs Are Barred From Recovering On This Claim.

In any event, the Woods are not entitled to any relief on this claim.  They seek damages and rescission of the foreclosure sale (a declaration that the foreclosure sale and the resulting substitute trustee's deed are void), but they cannot recover both.  As a matter of law, a mortgagor must elect either damages or rescission for a mortgagee's wrongful foreclosure.[9]

---

[8] *See Diversified, Inc. v. Gibraltar Sav. Ass'n*, 762 S.W.2d 620, 623 (Tex. App.—Houston [14th Dist.] 1988, writ den.).

[9] *Durkay v. Madco Oil Co.*, 862 S.W.2d 14, 21 (Tex. App.—Corpus Christi 1993, writ denied) ("A party who has lost property through a wrongful foreclosure is entitled to either the property or its value, *but not*

The Woods are entitled to neither.

The Woods cannot recover damages for several reasons.  First, as a matter of law, they cannot recover damages because they were never dispossessed of the Property.[10]  Second, there is no evidence of any lost equity.   In any event, the Woods cannot recover on their wrongful foreclosure claim because the evidence establishes that CitiMortgage is entitled to an offset that eliminates any damages the Woods may have suffered.  The Woods are nearly two-years behind in their payments. (Zehnle Aff. ¶ 10 (they are due for the April 1, 2010 payment); Ex.1-F).  CitiMortgage is entitled to an offset in the amount of the fair rental value of the Property since April 1, 2010, which is the current payment due on the Loan.[11]  (Id.)  Assuming (conservatively) that the Woods' regular monthly payment amount under the Note of principal and interest ($1,088.31) (excluding escrow amounts) at the time of the default to be the fair rental value of the property (this is the amount the Woods would be paying to live in the Property were the Loan current (Ex. 1-D), the Woods have received at least $21,766 (20 months x $1,088.31) in free rent, which exceeds any damages identified by the Woods.

Further, the Woods are not entitled to a rescission of the foreclosure sale because they have not tendered all amounts due and owing on the loan.  As a matter of law, the Woods must

both.") (emphasis added); *Diversified, Inc. v. Gibraltar Sav. Ass'n*, 762 S.W.2d 620, 623 (Tex. App.—Houston [14th Dist.] 1988, writ denied); *Owens v. Grimes*, 539 S.W.2d 387, 390 (Tex. Civ. App.—Tyler 1976, writ ref'd n.r.e.) ("Appellees, having elected to let the sale stand and recover at law for damages, are forever barred from attacking the trustee's deed.").

[10] *See Tarrant Savings Ass'n v. Lucky Homes, Inc.*, 390 S.W.2d 473, 475 (Tex. 1965); *Peterson v. Black*, 980 S.W.2d 818, 823 (Tex. App.—San Antonio 1998, no pet.) ("Recovery is conditioned on the disturbance of the mortgagor's possession based on the theory that the mortgagee must have committed a wrong similar to the conversion of personal property.  Where the mortgagor's possession is undisturbed, he has suffered no compensable damage."); *John Hancock Mut. Life Ins. Co. v. Howard*, 85 S.W.2d 986, 988 (Tex. Civ. App.—Waco 1935, writ ref'd).  The Woods admit in their Petition that at all times they have maintained possession of the Property. *See* Petition ¶ 2.1.

[11] *See, e.g., Smith v. Baldwin*, 611 S.W.2d 611, 617 (Tex. 1980); *Gotcher v. Barnett*, 757 S.W.2d 398, 404 (Tex. App.—Houston [14th Dist.] 1998, no writ).

tender all amounts owed in order to void a foreclosure sale.[12]   If the foreclosure sale is rescinded, the Woods would be required to pay all amounts due and owing, which is $32,913.21.   (Zehnle Aff. ¶ 15).   The Woods have not done that. (*Id.*).   Nor is there is any evidence that they could pay that amount, or that their alleged damages exceed that amount.

Thus, there is no genuine issue of material fact as to any net damages suffered by the Woods, and therefore the wrongful foreclosure claim must be dismissed.

## II.   There Is No Evidence Supporting A Declaration Invalidating The Foreclosure Sale Or The Substitute Trustee's Deed.

The Woods are not entitled to a declaratory judgment rescinding the foreclosure sale and invalidating the Substitute Trustee's Deed because there is no evidence that the foreclosure sale was unlawful, and the only summary judgment conclusively negates this contention.   In any event, the Woods admit that they have not tendered all amounts due and owing.   Thus, this claim fails as a matter of law.

For the same reasons, the Woods are not entitled to injunctive relief (Petition ¶¶ 5.2, 5.3).

## III.   The Woods' Claims For Violations Of the Fair Debt Collection Practices Act And Texas Debt Collection Act Fail Because There Is No Evidence Of Any Actionable Misrepresentation Or Any Damages.

The Woods' claims for violations of the Fair Debt Collection Practices Act ("FDCPA") and the Texas Debt Collection Act ("TDCA") fail because they are inapplicable or are wholly lacking any evidentiary support.

The Woods' FDCPA claim is inapplicable because the FDCPA does not apply to creditors, who are defined as "any person who offers or extends credit creating a debt or to

---

[12] *See Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) ("Tender of whatever sum is owed on the mortgage debt is a condition precedent to the mortgagor's recovery of title from a mortgagee who is in possession and claims title under a void foreclosure sale."); *Lambert v. First Nat'l Bank Bowie*, 993 S.W.2d 833, 835 (Tex. App.—Fort Worth 1999, pet. denied) (valid tender of the amount due is required).

whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 12 U.S.C. § 1692(a)(4).  CitiMortgage is a creditor – at the time of the alleged conduct, it owned the debt.  (Zehnle Aff. ¶ 4, Ex. 1-A); there is no evidence that at the time CitiMortgage acquired the debt the debt was in default or that CitiMortgage acquired it for the purpose of collecting it for another.  Therefore, CitiMortgage is a creditor under the FDPCA with respect to the Loan, and is not subject to the alleged FDCPA violations.

Further, the FDCPA and TDCA are inapplicable to the Woods' claims because the mere act of enforcing a security interest, as here, including the act of foreclosing on that interest, is not actionable under either the FDCPA or the TDCA.[13]  Thus, neither statute applies in this case.

In any event, there is no evidence of any actionable violation of the FDCPA.  First, Plaintiffs vaguely allege that CitiMortgage violated these statutes generally by "misrepresenting the character, amount, or extent of the indebtedness," but they fail to allege violation of any specific provisions of the FDCPA or the TDCA.[14]  Also, the only alleged misrepresentations made are the same vague allegations asserted in connection with their wrongful foreclosure

---

[13] See, e.g., Schanzle v. JPMC Specialty Mort. LLC, Case NO. 03-09-00639, 2011 Tex. App. LEXIS 1748 (Tex. App.—Austin Mar. 11, 2011, no pet.).  See also TEX. FIN. CODE ANN. § 392.001(7) (West 2006) (adopting definition of debt collector from Federal Fair Debt Collection Practices Act); Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985) (merely enforcing a security instrument as a servicer does not confer liability under the FDCPA); Crawford v. Countrywide Home Loans, Inc., No. 3:09cv247-PPS-CAN, 2010 U.S. Dist. LEXIS 84995, at *22 (N.D. Ind. Aug. 16, 2010 (foreclosure to enforce security interest and not to obtain a deficiency judgment against the borrowers is not debt collection under the FDCPA); Breedlove v. Wells Fargo Bank, N.A., No. CV-09-8135-PCT-JAT, 2010 U.S. Dist. LEXIS 77021 at *7, 2010 WL 3000012, at *3 (D. Ariz. July 28, 2010), Williams v. Countrywide Home Loans, 504 F. Supp. 2d 176, 190 (S.D. Tex. 2007); Izenberg v. ETS Servs., LLC, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008); San Diego Home Solutions, Inc. v. Reconstruct Co., 2008 U.S. Dist. LEXIS 99684, 2008 WL 5209972, at *1 (S.D. Cal. 2008).

[14] Henry v. CitiMortgage, Inc., No. 4:11-CV-83, 2011 U.S. Dist. LEXIS 64420, at *16 (E.D. Tex. May 9, 2011) (merely stating that Defendants violated the TDCA, without factual allegations, is "a legal conclusion couched as a factual assertion" and should not survive a motion for summary judgment).

---

claim – the alleged lack of proper notices being provided and the alleged assurances by CitiMortgage to the Woods that their request for a Loan workout was being reviewed. There is no evidence that any false or deceptive statements about the Loan were made by CitiMortgage to the Woods, and the summary judgment evidence conclusively establishes that all requisite foreclosure notices were sent to the Woods. Thus, the alleged violations are meritless.

Finally, there is no evidence of causation or damages. The Woods allege that the violations of the FDCPA and TDCA were a "producing cause of the damages sustained and incurred by Plaintiffs" (Petition ¶ 8.2), but there is no evidence of any damages or that they were caused by any violation of these statutes.

Thus, Defendants are entitled to judgment as a matter of law on this claim.

## CONCLUSION AND PRAYER

Because none of the Woods' claims or causes of action raises a genuine issue of material fact or are barred as a matter of law, Defendants are entitled to judgment as a matter of law as to all claims asserted against them. Defendants respectfully request that upon final hearing the Court grant this Motion, order that all of the Woods' claims and causes of action be dismissed with prejudice, and enter judgment in favor of Defendants for their reasonable and necessary attorneys' fees and costs of court, and such other and further relief to which they may be entitled.

Respectfully submitted,

WINSTEAD PC

By:_____/s/ Kent Pearson_____
         Brian T. Morris
         State Bar No. 14469600
         Kent B. Pearson
         State Bar No. 24037256

5400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
(214) 745-5400 / (214) 745-5390 – FAX

ATTORNEYS FOR DEFENDANTS
CITIMORTGAGE, INC. AND MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.


## CERTIFICATE OF SERVICE

The undersigned certifies that on this the 17th day of January, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Wake Kricken
P.O. Box 59331
Dallas, Texas 75229

By: _____/s/ Kent Pearson_____

---

DALLAS_1\5789883v3